UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                          |   |                              |
|--------------------------|---|------------------------------|
| ROBERT J. GALLAGHER,     | * |                              |
|                          | * |                              |
| Plaintiff,               | * |                              |
|                          | * |                              |
| v.                       | * | Civil Action No. 17-cv-11390-ADB |
|                          | * |                              |
| AMEDISYS, INC., et al.,  | * |                              |
|                          | * |                              |
| Defendants.              | * |                              |
|                          | * |                              |

## MEMORANDUM AND ORDER ON MOTIONS TO DISMISS

BURROUGHS, D.J.

Pro se Plaintiff Robert J. Gallagher, a chaplain formerly employed by Defendant Amedisys, Inc. ("Amedisys"), was assigned to visit the nursing home operated by Defendant Sentry Commons, LLC d/b/a Durgin Pines ("Durgin Pines") in May 2017. Plaintiff observed and reported to Amedisys what he believed to be unsafe living conditions at Durgin Pines. Shortly thereafter, Plaintiff resigned from his employment and filed this lawsuit against Amedisys and Durgin Pines, as well their employees, asserting claims under federal and state law for discrimination and retaliation based on his purported whistleblowing activity and a physical disability.

On December 29, 2017, Durgin Pines and its former employee, Defendant Nicholas Bridges, moved to dismiss the operative complaint [ECF No. 23] ("Amended Complaint") for lack of personal jurisdiction, improper venue, and insufficient service of process. [ECF No. 26]. On February 20, 2018, Amedisys and its employee, Defendant Brian Putnam, moved to dismiss for failure to state a claim. [ECF No. 35]. For the reasons set forth below, the Court GRANTS

the motion to dismiss filed by Durgin Pines and Bridges for lack of personal jurisdiction and GRANTS in part and DENIES in part the motion to dismiss filed by Amedisys and Putnam.

I.  BACKGROUND

The following facts are derived from the Amended Complaint, the allegations of which are taken as true for the purposes of evaluating the pending motions to dismiss. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

In May 2017, Amedisys, a provider of home health and hospice care, assigned Plaintiff to provide his services as a chaplain to residents at the Durgin Pines nursing home in Kittery, Maine. Am. Compl. ¶ 2. Plaintiff observed that one of the common areas at Durgin Pines was overcrowded with wheelchairs, visiting children and teachers, and Durgin Pines employees. Id. ¶ 3. Plaintiff tripped over one of the wheelchairs but was not injured. Id. ¶ 4. He asked a Durgin Pines staff member about the congested common area and why only some of the wheelchairs were in a locked position. Id. The staff member agreed to report the condition of the common area to Durgin Pines' CEO. Id.

On June 2, 2017, Plaintiff's immediate supervisor verbally "chided" him for the incident at Durgin Pines, informed Plaintiff that Durgin Pines wanted to "ban" him from its nursing home, and that Amedisys affirmed Durgin Pines' request. Id. ¶ 5. Plaintiff then contacted Putnam, an Amedisys Director of Operations, to discuss his reprimand. Id. ¶ 6. Plaintiff also continued to visit Durgin Pines, believing that Putnam had removed the ban, because he continued to electronically receive instructions to visit Durgin Pines. Id. ¶¶ 7−8. Although Plaintiff had recently garnered a positive performance review from Putnam during an on-site evaluation, Putnam "chided" him for disobeying the order not to visit Durgin Pines. Id. ¶¶ 8, 10. Additionally, Putnam informed Plaintiff that a written warning had been placed in his file, which

Plaintiff explains is often the beginning of the termination process. Id. ¶ 10. Putnam then asked Plaintiff to participate in certain meetings via telephone rather than in-person, although other meeting participants attended in-person. Id. ¶ 11.

During this time period, from April 2017 through June 12, 2017, Plaintiff also took a partial leave of absence and reduced his work week by 40% due to a urinary tract infection, which Putnam allegedly resented. Id. ¶¶ 13−14. The infection caused a variety of symptoms, including a "viral syndrome," fever, malaise, fatigue, exhaustion, dehydration, elevated white blood cell count, and myalgia. Id. at 6. Plaintiff then had an emergency surgical procedure performed on or around June 13, 2017 after his prescription medication was deemed insufficient. Id. ¶¶ 8, 16. According to Plaintiff, his relationship with Putnam worsened after he received certain accommodations due to his infection. Id. ¶¶ 16−17. Ultimately, Plaintiff resigned from Amedisys because Defendants effected a corporate policy that "would set him up for further written warnings, continuing retaliation, and ultimate firing." Id. ¶ 14.

Although the claims are not clearly articulated, the Amended Complaint appears to assert the following causes of action against Defendants: (1) whistleblower retaliation under M.G.L. c. 149, § 185; (2) whistleblower retaliation under Maine's Whistleblower Protection Act ("MWPA"); (3) mandated reporter retaliation under M.G.L. c. 119, § 51A and M.G.L. c. 19C, § 10; (4) disability discrimination and retaliation under Title I of the Americans with Disabilities Act ("ADA"), the Maine Human Rights Act ("MHRA"), and Title VII of the Civil Rights Act of 1964 ("Title VII"); (5) violations under Massachusetts and federal consumer protection statutes; and (6) constructive discharge and hostile work environment under Title VII. Although the allegations are not clearly delineated amongst the claims, Plaintiff essentially contends that Defendants created a work environment that forced him to resign as an Amedisys employee,

either in retaliation for reporting the events at Durgin Pines or as a form of discrimination based on his disability.

## II. MOTION TO DISMISS: DURGIN PINES AND BRIDGES

Defendants Durgin Pines and Bridges[1] move to dismiss the Amended Complaint for lack of personal jurisdiction, improper venue, and insufficient service of process. [ECF No. 26]. Plaintiff opposed this motion only with respect to the sufficiency of service of process. [ECF No. 29]. Because the Court dismisses Durgin Pines and Bridges from this case for lack of personal jurisdiction, it need not reach the remaining arguments.

Plaintiff bears the burden of establishing that jurisdiction over Durgin Pines and Bridges lies in Massachusetts. Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). "Faced with a motion to dismiss for lack of personal jurisdiction, a district court 'may choose from among several methods for determining whether the plaintiff has met [its] burden.'" Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007) (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50–51 (1st Cir. 2002)). The prima facie standard applies where, as here, "a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). The prima facie standard does not involve differential fact finding; rather, it requires "only that a plaintiff proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." Baskin-Robbins, 825 F.3d at 34. The Court accepts plaintiff's properly documented evidentiary proffers as true "and construe[s] them in the light most congenial to the plaintiff's jurisdictional claim." Daynard, 290 F.3d at 51

---

[1] The Amended Complaint contains no substantive allegations related to Defendant Bridges other than the conclusory statement that he "conspired" with Putnam to ban Plaintiff from visiting Durgin Pines. Am. Compl. at 1.

4

(citations omitted). "If the plaintiff makes a *prima facie* showing of jurisdiction supported by specific facts alleged in the pleadings, affidavits, and exhibits, its burden is met." Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 979 (1st Cir. 1986).

Here, Plaintiff's potentially viable claims arise under federal law (the ADA and Title VII) and Maine state law. "When a district court's subject matter jurisdiction is founded upon a federal question, the constitutional limits of the court's personal jurisdiction are fixed, in the first instance, not by the Fourteenth Amendment but by the Due Process Clause of the Fifth Amendment." United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085 (1st Cir. 1992). "In such circumstances, the Constitution requires only that the defendant have the requisite 'minimum contacts' with the United States, rather than with the particular forum state (as would be required in a diversity case)." Id. "Nevertheless, while courts in federal question cases have found 'that sufficient contacts [to justify the assertion of personal jurisdiction] exist whenever the defendant is served within the sovereign territory of the United States,' . . . the basis for service of process returnable to a particular court must be grounded within a federal statute or Civil Rule." Id. (citation omitted). Fed. R. Civ. P. 4 "constitutes the principal mechanism for service of process in the federal courts," and Rule 4(f) typically limits service of process "to the territorial limits of the state in which the court is held," although a number of federal laws provide for either nationwide or worldwide service. Id. at 1085−86 (quoting Johnson Creative Arts, Inc. v. Wool Masters, Inc., 743 F.2d 947, 950 (1st Cir. 1984)). Neither Title VII nor the ADA provides for nationwide service. See Malave-Torres v. Cusido, 839 F. Supp. 2d 501, 508 (D.P.R. 2012); McCarthy v Waxy's Keene, LLC, No. 16-cv-122-JD, 2016 WL 4250290, at *2 n.1 (D.N.H. Aug. 10, 2016). Therefore, under Rule 4, service of

process is proper if it would be permitted under Massachusetts law. Malave-Torres, 839 F. Supp. 2d at 508.

"In Massachusetts, a court may exercise personal jurisdiction over a foreign defendant if such jurisdiction is authorized by state statute and its exercise does not offend the Due Process Clause of the Fourteenth Amendment." Bohnenberger v. MCBC Hydra Boats, LLC, No. 16-cv-11368-LTS, 2017 WL 3976566, at *4 (D. Mass. Sept. 7, 2017) (quoting Pike v. Clinton Fishpacking, Inc., 143 F. Supp. 2d 162, 166 (D. Mass. 2001)). Because the First Circuit has generally treated "the limits of Massachusetts' long-arm statute as coextensive with those of the Due Process Clause," Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016), the Court may "sidestep the statutory inquiry and proceed directly to the constitutional analysis." Evans Cabinet Corp. v. Kitchen Int'l, Inc., 593 F.3d 135, 146 (1st Cir. 2010).[2] The outcome is that the personal jurisdiction analysis is the same regardless of whether the Court construes this case as arising out of federal question or diversity jurisdiction. See generally Bohnenberger, 2017 WL 3976566, at *4 ("no practical difference" in how district court determines personal jurisdiction in a diversity case compared to a federal question case brought under a statute

---

[2] The Massachusetts Supreme Judicial Court generally "has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'" Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008) (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002)); see Adelson v. Hananel, 652 F.3d 75, 80−81 (1st Cir. 2011) (Massachusetts long-arm statute has been construed "as being coextensive with the limits permitted by the Constitution"). The First Circuit has recently "suggested that Massachusetts's long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution," Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016), but neither party has raised this issue. The Court therefore begins with the constitutional analysis. See Katz v. Spiniello Cos., 244 F. Supp. 3d 237, 244 (D. Mass. 2017); Bohnenberger v. MCBC Hydra Boats, LLC, 2017 WL 3976566, at *4 n.8 (D. Mass. Sept. 7, 2017) (citing recent Massachusetts cases that interpret the Massachusetts long-arm statute as allowing for the assertion of personal jurisdiction to the limits permitted by the United States Constitution).

without nationwide service) (quoting Zeus Projects Ltd., et al. v. Perez y Cia. de P.R., Inc., 187 F.R.D. 23, 28 (D.P.R. 1999))).

There are two types of personal jurisdiction: general and specific. Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005). General jurisdiction exists "when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." United Elec. Workers, 960 F.2d at 1088. In contrast, specific jurisdiction exists when "the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994) (quoting United Elec. Workers, 960 F.2d at 1088−89).

A. **General Jurisdiction**

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011)). "In addition to domicile, a court may also assert general jurisdiction over an individual when the person offers explicit consent, . . . or is physically present in the forum state." Grice v. VIM Holdings Grp., LLC, 280 F. Supp. 3d 258, 269−70 (D. Mass. 2017) (citing J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 880, (2011) and Burnham v. Super. Ct. of Cal., Cty. of Marin, 495 U.S. 604, 619 (1990)). For a corporate defendant, the Court must find its contacts "so 'continuous and systematic' as to render [it] essentially at home" in the forum state. Daimler, 571 U.S. at 133 n.11 (quoting Goodyear, 564 U.S. at 919); see also Kipp v. Ski Enter. Corp. of Wis., 783 F.3d 695, 698 (7th Cir. 2015) ("In recent years, the Supreme Court has clarified and, it is fair to say,

7

raised the bar for [general] jurisdiction."). The place of incorporation and principal place of business are "paradig[m] . . . bases for general jurisdiction." Daimler, 571 U.S. at 137.

Bridges stated by affidavit that he does not reside in Massachusetts or conduct any business in Massachusetts, that he was employed by Durgin Pines from January 2013 until August 2017 during which time he worked at its facility in Kittery, Maine, and that on September 1, 2017 he began working at a separate retirement community in York, Maine. [ECF No. 27-1]. Plaintiff does not allege that Bridges is domiciled in Massachusetts and provides no evidence to establish jurisdiction over Bridges. He asserts that Bridges' LinkedIn profile suggests that, at some point in time, Bridges worked in or was professionally associated with the "Greater Boston Area." Plaintiff's proffer concerning Bridges' professional or social network, even taken at face value, is insufficient to show that Bridges was domiciled in Massachusetts or was present in Massachusetts at any relevant time, or that he consented to jurisdiction in Massachusetts. Similarly, Plaintiff acknowledges that Durgin Pines is located in Kittery, Maine and does not allege or show that Durgin Pines is incorporated in Massachusetts, has a principal place of business in Massachusetts, or otherwise does any business in Massachusetts. Accordingly, the Court cannot exercise general jurisdiction over Bridges or Durgin Pines.

### B. Specific Jurisdiction

To determine whether it may exercise specific jurisdiction, the Court conducts a three-part inquiry:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Pritzker, 42 F.3d at 60–61 (quoting United Elec. Workers, 960 F.2d at 1089).

Here, none of the allegations in the Amended Complaint concern Massachusetts at all or suggest in-state contacts to show purposeful availment. The entirety of the events related to Plaintiff's purported whistleblowing activity, alleged disability, and work environment transpired in Maine. Plaintiff has not alleged or adduced any evidence to show that Bridges or Durgin Pines have any material contacts with Massachusetts. Further, given that the transactions and occurrences relevant to this case occurred exclusively in Maine, that Defendants are located in Maine, and the majority of the evidence and witnesses are likely to be in Maine, the applicable Gestalt factors also do not favor a finding of jurisdiction in Massachusetts. Accordingly, the case is dismissed for lack of personal jurisdiction as to Bridges and Durgin Pines.

## III. MOTION TO DISMISS: AMEDISYS AND PUTNAM

Amedisys and Putnam move to dismiss all claims brought against them under Federal Rule of Civil Procedure 12(b)(6). To evaluate a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." A.G. ex rel. Maddox v. v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011)). The complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," and should "contain 'enough facts to state a claim to relief that is plausible on its face.'" Id. (quoting Fed. R. Civ. P. 8(a)(2) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw

9

on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).

"The plausibility standard invites a two-step pavane." Maddox, 732 F.3d at 80. First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Secondly, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

The Court also recognizes that a "pro se complaint is entitled to a liberal construction" and applies a "less stringent" standard to the Amended Complaint as compared to a pleading drafted by an attorney. Garrett v. Ill. Att'y Gen., No. 14-cv-10217-RWZ, 2014 WL 652614, at *2 (D. Mass. Feb. 18, 2014) (quoting Haines v. Kerner, 404 U.S. 519, 520−21 (1972)). The Court, however, must "refrain from conjuring up unpled allegations to give life to a phantom cause of action." Gaskins v. Dickhaut, 962 F. Supp. 2d 336, 339 (D. Mass. 2013).

A. **Mandated Reporter Retaliation under M.G.L. c. 119 § 51A**

Under Massachusetts General Laws Chapter 119, Section 51A(h), "[n]o employer shall discharge, discriminate or retaliate against a mandated reporter who, in good faith, files a report under this section." Mass. Gen. Laws ch. 119, § 51A(h). To establish a prima facie case of retaliation, Plaintiff must show that "(1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) the adverse employment action was causally related to the protected activity." Asia v. Res-Care Inc., 59 F. Supp. 3d 260, 267 (D. Mass. 2014) (quoting

Karatihy v. Commonwealth Flats Dev. Corp., 995 N.E.2d 819, 821–22 (Mass. App. Ct. 2013)).

"As the language of section 51A(a) makes clear, the mandated reporter obligations are triggered when there is reasonable cause to believe that a child is suffering physical or emotional injury," due to: "(i) abuse inflicted upon him which causes harm or substantial risk of harm to the child's health or welfare, including sexual abuse; (ii) neglect, including malnutrition; (iii) physical dependence upon an addictive drug at birth . . . ; (iv) being sexually exploited as a child; or (v) being a human trafficking victim . . . ." Guardia v. Clinical & Support Options, Inc., 25 F. Supp. 3d 152, 162 (D. Mass. 2014); M.G.L. c. 119 § 51A(a).

Here, Plaintiff alleges that he is a mandated reporter in his capacity as a chaplain but does not allege that he filed, either in writing or orally, the type of report described under Section 51A. See M.G.L. c. 119, § 51A(d). Plaintiff saw children under the supervision of their school teachers in a common area of a nursing home that was overcrowded with wheelchairs; at most, he speculates that this alleged environmental hazard raises the risk of injury to an occupant of the room, but such "speculative fear of future harm" does not trigger section 51A(a) and, thus, cannot form the basis of a retaliation claim under section 51A(h). Guardia, 25 F. Supp. 3d at 162. Because Plaintiff did not file a Section 51A report and has not provided any non-conclusory, non-speculative allegations of abuse of a child, the claim is dismissed against Amedisys and Putnam.

**B.     Mandated Reporter Retaliation under M.G.L. c. 19C § 10**

Massachusetts General Laws Chapter 19C, Section 10 states that "mandated reporters shall notify the [Disabled Persons Protection Commission] orally of any reportable condition immediately upon becoming aware of such condition and shall report in writing within forty-eight hours after such oral report." M.G.L. c. 19C, § 10. A "reportable condition" is defined as "a

serious physical or emotional injury resulting from abuse, including unconsented to sexual activity." M.G.L. c. 19C § 1. "Abuse" means "an act or omission which results in serious physical or emotional injury to a disabled person . . . ." Id. Although Plaintiff does not specifically invoke this portion of the statute, Section 11 prohibits retaliation against an employee for "filing a report with the [Disabled Persons Protection Commission]." M.G.L. c. 19C, § 11.

Here, Plaintiff does not allege that he made any report to the Disabled Persons Protection Commission, nor are there any plausible allegations in the Amended Complaint that a disabled person was subjected to serious physical or emotional injury. The claim cannot survive based on speculation of future harm that could hypothetically arise in an overcrowded common space. Accordingly, Plaintiff's claim under Chapter 19C against Amedisys and Putnam is dismissed.

### C. Massachusetts and Federal Whistleblower Retaliation

"The Massachusetts whistleblower statute prohibits a public employer—including a municipality, Mass. Gen. Laws ch. 149 § 185(a)(2)—from taking any retaliatory action against an employee who engages in [whistleblowing] activities," and "gives an aggrieved employee a private right of action against his or her employer." Bennett v. City of Holyoke, 362 F.3d 1, 5 (1st Cir. 2004) (citing M.G.L. c. 149, § 185(d)). The statute defines "employer" as "the commonwealth, and its agencies or political subdivisions, including, but not limited to, cities, towns, counties and regional school districts, or any authority commission, board or instrumentality thereof." M.G.L. c. 149 § 185(a)(2).

Amedisys is a private employer, and therefore not subject to suit under the statute. See U.S. ex rel. Goulden v. BAE Sys. Info & Elec. Sys. Integration, Inc., No. 11-cv-12017-NMG, 2014 WL 3897645, at *10 (D. Mass. Aug. 7, 2014) (dismissing § 185 claim because "the law

applies only to public employers"); Stevenson v. Amazon.com, Inc., No. CV 15-13505-FDS, 2016 WL 2851316, at *5 (D. Mass. May 13, 2016) (section 185 "applies only to public employers, and does not protect employees from retaliation by private employers . . ."). Plaintiff's claim must also be dismissed against Putnam, an Amedisys employee, because the statute does not impose individual liability. See Ahanotu v. Mass. Tpk. Auth., 466 F. Supp. 2d 378, 396 (D. Mass. 2006); Orell v. UMass Mem'l Med. Ctr., Inc., 203 F. Supp. 2d 52, 66 (D. Mass. 2002) ("The plain language of the statute does not support the imposition of individual liability. The definition enumerates several entities considered to be employers within the meaning of the statute but does not contain terms suggesting an intent to establish individual liability."). Accordingly, the Massachusetts whistleblower claims are dismissed against Amedisys and Putnam.[3]

### D. Unfair and Deceptive Practices under M.G.L. c. 93A

Massachusetts General Laws Chapter 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. c. 93A, § 2(a).[4] A successful claim under Chapter 93A requires a showing of (1) a deceptive act or practice on the part of the defendant; (2) an injury or loss suffered by the plaintiff, and (3) a causal connection between the

---

[3] The Amended Complaint also references the federal Whistleblower Protection Act of 1989, 5 U.S.C. § 2302. Because Plaintiff does not claim to be a federal employee, he cannot state a claim under this statute against Amedisys or Putnam. See Negron-Santiago v. San Cristobal Hosp., 764 F. Supp. 2d 366, 370−71 (D.P.R. 2011) ("The Whistleblower Protection Act of 1989, by its terms, applies to federal employees. . . . We see no manner in which employees of a Commonwealth-affiliated utility company could be classified as federal employees under the Whistleblower Protection Act."); Grassick v. Holder, No. 09-cv-587-PB, 2012 WL 1066691, at *3 (D.R.I. Mar. 28, 2012) (Whistleblower Protection Act "protects certain federal employees from agency reprisals for whistleblowing activities").

[4] Although the Amended Complaint references "federal consumer protection," no private right of action exists under the Federal Trade Commission Act. See Shaulis v. Nordstrom Inc., 120 F. Supp. 3d 40, 46 (D. Mass. 2015) ("The Federal Trade Commission Act does not provide a private cause of action" (citing Marini v. DragadosUSA, No. 11-cv-11316-GAO, 2012 WL 4023674, at *1 (D. Mass. Sept. 11, 2012))).

defendant's deceptive act or practice and the plaintiff's injury. Casavant v. Norwegian Cruise Line, Ltd., 919 N.E.2d 165, 168−69 (Mass. App. Ct. 2009), aff"d, 952 N.E.2d 908 (Mass. 2011) (citing M.G.L. c. 93A, § 9); Hershenow v. Enterprise Rent–A–Car Co. of Bos., 840 N.E.2d 526, 532 (Mass. 2006)). "Chapter 93A liability is decided case-by-case, and Massachusetts courts have consistently emphasized the 'fact-specific nature of the inquiry.'" Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) (citation omitted). "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a [Chapter] 93A violation is a question of law." Id. at 54 (quoting Ahern v. Scholz, 85 F.3d 774, 797 (1st Cir. 1996)).

Plaintiff's Chapter 93A claim arises entirely out of the employment relationship between Plaintiff and Amedisys, and/or Putnam, his supervisor at Amedisys. None of the allegations predate or postdate the employment relationship, and the events and occurrences at issue took place while Plaintiff was acting in the scope of his employment as a chaplain for Amedisys. "Massachusetts courts have narrowed the scope of [Chapter 93A] by interpreting 'trade or commerce' to exclude various kinds of activities," such that generally "an employee cannot bring suit against his or her employer under Chapter 93A." Debnam v. FedEx Home Delivery, 766 F.3d 93, 96 (1st Cir. 2014) (citing Manning v. Zuckerman, 444 N.E.2d 1262 (Mass. 1983)); see Linkage Corp. v. Trs. of Boston Univ., 679 N.E.2d 191, 207 n.33 (Mass. 1997) (Chapter 93A § 11 has been limited "to exclude intra-enterprise disputes because they are more similar to purely private disputes and are not 'commercial transaction[s] . . . in the sense required by [Chapter 93A],'" including "disputes stemming from an employment relationship" (quoting Szalla v. Locke, 657 N.E.2d 1267, 1270 (Mass. 1995))). Because the totality of the allegations concern Plaintiff's employment relationship with Amedisys and Putnam, his claim under Chapter 93A

14

against both of them must be dismissed.[5]

### E.     Other Discrimination and Retaliation Claims

The following remaining claims derive from Plaintiff's contention that Amedisys and Putnam discriminated or retaliated against him for his alleged disability or whistleblowing activity: (1) retaliation under the MWPA; (2) hostile work environment and/or constructive discharge under Title VII; and (3) disability discrimination and/or retaliation under the ADA, Title VII, and MHRA.

As an initial matter, these remaining claims must be dismissed against Putnam, because neither Title VII, the ADA, the MHRA, nor the MWPA allow Plaintiff to hold an individual employee liable. See Roman-Oliveras v. P.R. Elec. Power Auth., 655 F.3d 43, 52 (1st Cir. 2011) ("We thus agree with the virtually universal view that Title I of the ADA, like Title VII of the Civil Rights Act, 'addresses the conduct of employers only and does not impose liability on co-workers.'" (quoting Fantini, 557 F.3d at 31))); Fantini v. Salem State Coll., 557 F.3d 22, 30 (1st Cir. 2009) ("[T]here is no individual employee liability under Title VII."); Charette v. St. John Valley Soil & Water Conservation Dist., No. 17-cv-35-GZS, 2017 WL 2683951, at *12 (D. Me. June 20, 2017) ("[T]he Court reads [Fuhrmann v. Staples Office Superstore E. Inc., 58 A.3d 1083 (Me. 2012)] as foreclosing any recourse to individual liability in the employment context

---

[5] Plaintiff's Chapter 93A claim also fails to the extent that Plaintiff asserts, on behalf of the Durgin Pines residents, that Amedisys unfairly competed with other nursing homes by overcrowding its common areas. "Chapter 93A provides a cause of action for a plaintiff who 'has been injured,' . . . by 'unfair or deceptive acts or practices.'" Shaulis, 120 F. Supp. 3d at 49 (quoting Rule v. Fort Dodge Animal Health, Inc., 607 F.3d 250, 253 (1st Cir. 2010)). Plaintiff has not alleged that he suffered any injury from the overcrowding of the Durgin Pines common area, or that any Durgin Pines resident has suffered an injury. Although the Massachusetts Supreme Judicial Court may have a relaxed standard for showing injury in certain circumstances, the violation of any legal right "must cause the consumer some kind of separate identifiable harm arising from the violation itself." Tyler v. Michaels Stores, Inc., 984 N.E.2d 737, 745 (Mass. 2013). At most, the Amended Complaint implies that some hypothetical or speculative harm may occur in the future.

15

under the [MHRA]."); United States ex rel. Worthy v. E. Maine Healthcare Sys., No. 14-cv-00184-JAW, 2017 WL 211609, at *32 (D. Me. Jan. 18, 2017) ("Only an employer can be liable under the MHRA for retaliation for whistle-blowing activity."); Fisk v. Mid Coast Presbyterian Church, No. 16-cv-00490-JDL, 2017 WL 1755950, at *4−5 (D. Me. May 4, 2017) ("[T]here is no individual supervisory liability under the [MWPA]" or MHRA).

The remaining question is whether these claims are plausibly stated against Amedisys. Amedisys primarily seeks dismissal on the grounds that Plaintiff has not adequately alleged an adverse employment action, which is a prima facie element of each of the remaining claims. Although the Court agrees that Plaintiff's allegations facially appear insufficient to show the pervasiveness and severity of the working conditions, or the materiality of any change in circumstances, characteristic of an adverse employment action, Amedisys' theory of dismissal is too fact-specific for the 12(b)(6) stage. "[D]etermining whether an [employment] action is materially adverse necessarily requires a case by case inquiry." Sabinson v. Trs. of Dartmouth Coll., No. 05-cv-424-SM, 2006 WL 2482733, at *1 (D.N.H. Aug. 26, 2006) (quoting Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 50 (1st Cir. 1999)); see Fisk, 2017 WL 1755950, at *4 ("Specifically, courts shy from evaluating the specific instances of misconduct alleged in a complaint against the legal standard for hostile work environment claims, because there is no 'obligation on the pleader to identify in the complaint all the evidence that would later be offered in support of the claim pleaded.'" (quoting Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 474 (1st Cir. 2002))). Notably, the vast majority of the cases cited by Defendants "that turned on the scope of 'adverse employment actions' were decided upon summary judgment, rather than at the motion to dismiss stage." Charette, 2017 WL 2683951, at *9.

Here, taking the facts in the light most favorable to Plaintiff, Plaintiff developed a urinary tract infection which led to his hospitalization and subsequent need for accommodations in April 2017, a condition which continued through at least June 12, 2017 when he required emergency surgery. During this time period, on June 2, 2017, he reported what he believed to be unsafe conditions for the nursing home residents at Durgin Pines. Shortly thereafter, Amedisys reprimanded him and banned him from visiting Durgin Pines to prevent or discourage him from complying with his duties as an alleged mandated reporter. Amedisys also gave him a written warning for continuing to visit Durgin Pines despite the ban and began asking him to participate in certain meetings by telephone while other participants attended in person.[6] "[A]llegedly adverse employment actions should be 'viewed in aggregate' and 'otherwise minor slights, relentlessly compounded, may become sufficiently adverse to warrant relief.'" Bishop, 143 F. Supp. 2d at 65 (quoting Simas, 170 F.3d at 48, 50. At this stage in the litigation and on this record, the Court cannot conclude that Plaintiff's allegations, taken in the light most favorable to him as a *pro se* litigant, fail to set forth a plausible adverse employment action. "This victory, such as it is, may prove transitory to plaintiff, but disposition of the issues presented requires a more fully developed record." Sabinson, 2006 WL 2482733, at *1.[7]

---

[6] Plaintiff also alleges that he "recalled" a statement that Putnam made to him: "You are a salaried employee. Because of overtime costs, I can't work my hourly staff over forty hours. But the Chaplain is salaried and so I can work him to death, if I want to." [ECF No. 23 at 14]. Plaintiff does not allege that he was overworked at any time, but rather complains that he was not given certain assignments.

[7] The question of whether Plaintiff's urinary tract infection constitutes a disability under the ADA is also better suited for determination at the summary judgment stage. See Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 33 (1st Cir. 2010) (disability inquiry is "fact-intensive and individualized" (quoting Sepulveda v. Glickman, 167 F. Supp. 2d 186, 191 (D.P.R. 2001))).

## IV.   CONCLUSION

For the reasons stated herein, the motion to dismiss filed by Durgin Pines and Bridges [ECF No. 26] is <u>GRANTED</u> for lack of personal jurisdiction over those defendants. The motion to dismiss filed by Amedisys and Putnam [ECF No. 35] is <u>GRANTED</u> in part and <u>DENIED</u> in part as follows: (1) all of Plaintiff's claims are dismissed as to Putnam; and (2) only the following claims survive with respect to Amedisys: retaliation under the MWPA; hostile work environment and constructive discharge under Title VII; and disability discrimination and retaliation under the ADA, MHRA, and Title VII.

**SO ORDERED.**

May 15, 2018  /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE